# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

Alejandro Arteaga, (M27265),    )
                             )
              Petitioner,   )
                             )       No. 18-cv-03231
      v.             )
                             )       Hon. Franklin U. Valderrama
                             )
Justin Hammers,          )
                             )
             Respondent.  )

## MEMORANDUM OPINION AND ORDER

Petitioner Alejandro Arteaga, an Illinois Department of Corrections inmate presently on mandatory supervised release, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254, challenging his convictions for delivery of a controlled substance and possession of a controlled substance with intent to deliver, from the Thirteenth Judicial Circuit Court, La Salle County, Illinois. R. 1, Petition.[1] The Court denies the petition and declines to issue a certificate of appealability.

## Background

The Court draws the following factual history from the state court record (R. 11, Record) and state appellate court opinions. State court factual findings, including facts set forth in state court opinions, have a presumption of correctness, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C § 2254(e)(1); *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018);

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

*Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted). Petitioner has not made such as showing.

In March 2010, an undercover police officer purchased cocaine from a drug dealer on two separate occasions. *Illinois v. Arteaga*, 2014 IL App (3d) 120207-U, ¶ 5. The first purchase was 28.3 grams of cocaine in exchange for $800, and the second was an additional 340 grams of cocaine at a price of $720 or $730 per ounce. R. 11-16, *Illinois v. Arteaga*, No. 3-15-0394 at 1 (Ill. App. Ct. Sept. 26, 2017). The dealer was arrested, turned state's evidence, and identified Petitioner as his supplier. *Id*; *Arteaga*, 2014 IL App (3d) 120207-U, ¶ 5. He explained that Petitioner supplied him with the cocaine he sold and that he returned the proceeds to Petitioner. *Id*. The officers executed a search warrant at a building owned by Petitioner and discovered 115.3 grams of cocaine and supplies for packaging the drugs. *Id*.; R. 11-2, Report of Proceedings at 911; R. 11-16, *Arteaga*, No. 3-15-0394 at 2.

Police surveillance and fingerprint evidence also connected Petitioner to the crime. During one of the March 2010 sales, the drug dealer initially told the undercover officer that he did not have the drugs with him. Report of Proceedings at 454. The drug dealer made a phone call in the officer's presence and referred to an "Alex" during the conversation. *Id*. A car subsequently came and delivered the drugs to the drug dealer, and, in turn, a different officer followed the car back to Petitioner's building where the search warrant was later executed. *Id*. at 496–504. A third officer conducting surveillance of the undercover drug purchase witnessed Petitioner

2

meeting with the drug dealer immediately before and after the transaction. *Id*. at 934.

Petitioner's fingerprints and other identifying information also connected him to the drugs. The drugs were found in the basement of Petitioner's building. Report of Proceedings at 913. Two separate items, a receipt and a name plate card, both of which had Petitioner's name on them, were discovered in the basement near where the drugs were seized. *Id*. at 913–14. In addition to the cocaine, police discovered several items commonly used in the drug trade, including a scale, other non-cocaine powders that are used for diluting ("cutting") cocaine for resale, a microwave with cocaine in a baking dish inside of it, and multiple plastic baggies. *Id*. at 594, 791, 913– 15. Subsequent testing by the Illinois State Police Forensic Science Laboratory matched Petitioner's fingerprints to the prints found on the recovered bottles of non-cocaine powders used for cutting the drugs. *Id*. at 867–73.

At trial, the jury found Petitioner guilty, and the trial court sentenced him to 16 years of imprisonment. *Arteaga*, 2014 IL App (3d) 120207-U, ¶¶ 5, 8. Petitioner's direct appeal before the Appellate Court of Illinois was limited to challenging his sentence—there was no attack on his conviction. *Id*. at ¶ 12; R. 11-3, Pet. Br. No. 3-12-0207, at 3–4. The state appellate court reversed and remanded for resentencing, holding the trial court considered improper factors when imposing the sentence. *Arteaga*, 2014 IL App (3d) 120207-U, ¶ 29. Following the remand, Petitioner was again sentenced to 16 years of imprisonment. *Arteaga*, 2015 IL App (3d) 140572-U, ¶ 12. He challenged his sentence on appeal once more, but this time the appellate

3

court affirmed. *Id*. at ¶ 29; R. 11-7, at 2–3. Petitioner did not bring a Petition for Leave to Appeal (PLA) before the Supreme Court of Illinois on direct appeal.

Petitioner next brought a *pro se* postconviction petition before the state trial court alleging: (1) the admission at trial of a videotaped interview of Petitioner by the police violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) the trial court erred by denying his motion to suppress the evidence seized during the search of his building in violation of his Fourth Amendment rights; (3) the prosecutor made improper comments during closing arguments regarding Petitioner's prior conviction; (4) a speedy trial right violation; (5) ineffective assistance of trial counsel for failing to assert the speedy trial right; and (6) ineffective assistance of appellate counsel for failing to raise these issues on direct appeal. R. 11-1, Common Law Record at 312–41; R. 11-16, *Arteaga*, No. 3-15-0394, at 2. The state court dismissed the petition, and Petitioner appealed to the appellate court. R. 11-16, *Arteaga*, No. 3-15-0394, at 2. Petitioner, represented by the Illinois State Appellate Defender, did not raise any of the claims presented in the *pro se* postconviction petition on appeal. R. 11-11, Pet. Br. 3-15-0394, at 2; R. 11-16, *Arteaga*, No. 3-15-0394 at 3. Instead, Petitioner's brief, submitted by counsel, raised a single issue on appeal challenging a fine imposed in the case. *Id*. During the process of completing the brief, the assistant appellate defender wrote to Petitioner explaining that she had reviewed the record and was unable to raise any of the issues from the *pro se* postconviction petition on appeal because she concluded the issues were meritless. R 1, Petition at 17–18.

4

Petitioner then brought a motion to amend before the state appellate court while his appeal was pending. R. 11-14, Pet. Mot. Amend. The motion sought leave to "amend appellant's brief and allow him to proceed *pro se*." *Id.* at 1. The state appellate court denied Petitioner's request to amend his brief, explaining he was represented by counsel. R. 11-15, 6/13/2017 Order. The appellate court subsequently denied the appeal, rejecting the fine issue raised in the counseled brief. R. 11-16, *Arteaga*, No. 3-15-0394, at 4. Petitioner's *pro se* postconviction PLA challenged the appellate court's rejection of the fine issue, (R. 11-17, PLA), and the PLA was denied by the Supreme Court of Illinois, *Illinois v. Arteaga*, No. 122835, 94 N.E.3d 675 (Ill. Jan. 18, 2018) (Table), completing his state court proceedings.

Petitioner turned to this Court with his instant habeas corpus petition. R. 1, Petition. Respondent answered that all claims were procedurally defaulted because the state appellate court denied Petitioner's motion to amend his brief pursuant to Illinois's rule against hybrid representation resulting in an adequate and independent state ground of decision. R. 10, Answer at 5. The previously assigned judge[2] rejected Respondent's argument and ordered supplemental briefing. R. 17, 7/31/2019 Order. The parties subsequently completed the supplemental briefing making the habeas corpus petition fully briefed and ready for resolution. R. 30, Respondent Suppl. Br.; R. 36, Petitioner Resp.; R. 37, Respondent Sur-Reply.

---

[2]This case was originally pending before Judge Robert W. Gettleman. The case was then reassigned to Judge Martha M. Pacold on 8/23/2019. R. 24. The case was reassigned to this Court on September 28, 2020. R. 47.

**Legal Standard**

Petitions for habeas corpus are governed by the Anti-Terrorism and Effective Death Penalty Act of 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotation and citation omitted). This means that a state petitioner must fully and fairly present federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). If a petitioner has not properly assert federal constitutional claims at each level of state review, then the claims are procedurally defaulted. *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009).

Alternatively, a claim is also procedurally defaulted when a petitioner fails to raise federal claims in compliance with state procedural rules, making the state court's refusal to decide the merits of the claims an independent and adequate state ground for denying federal review. *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010). The state court must have actually relied on the state procedural bar as an independent basis in deciding the case. *Smith v McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Procedural default under either alternative precludes federal court review of

a petitioner's habeas claims. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012).

However, a habeas petitioner may overcome procedural default either by demonstrating cause and actual prejudice from the default, or by showing that the federal court's refusal to consider the claim would result in a fundamental miscarriage of justice. *Kaczmarek*, 627 F.3d at 591. A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Even if a habeas petitioner has exhausted administrative remedies or overcome a defaulted claim, still a federal court may only grant habeas relief for a state-court conviction if the habeas petitioner meets one of two statutory requirements: (1) the state-court decision involved an unreasonable application of clearly established federal law, 28 U.S.C. § 2254(d)(1), or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented during the state-court proceeding, 28 U.S.C. § 2254(d)(2). Under the first alternative—an "unreasonable application of law"—a federal court can grant relief only if the state court's decision was "objectively" unreasonable, not merely an incorrect or erroneous application of Supreme Court precedent. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). This standard is difficult to meet because "a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."

7

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation and citation omitted). As for second alternative—an "unreasonable determination of the facts"—a petitioner must demonstrate that the state court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (internal quotation and citations omitted). The state court decision "must be so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable." *Alston v. Smith,* 840 F.3d 363, 370 (7th Cir. 2016) (internal quotation and citation omitted). Similar to the unreasonable-law analysis, the unreasonable-facts analysis incorporates a deferential standard that sets a high bar for a state habeas petitioner to overcome.

## Analysis

### I.     Petitioner's Claims

The instant habeas corpus petition raises seven claims:

1. Claim One: A speedy trial claim and related ineffective assistance of counsel argument.

2. Claim Two: A *Miranda v. Arizona*, 384 U.S. 436 (1966), claim.

3. Claim Three: A prosecutorial misconduct claim regarding the use of a prior conviction.

4. Claim Four: An ineffective assistance of counsel claim regarding the use of his prior conviction.

5. Claim Five: A Fourth Amendment claim regarding the search of his building where the cocaine was discovered by the police.

6. Claim Six:   Ineffective assistance of counsel for failing to call two witnesses in support of his Fourth Amendment challenge.

8

7. Claim Seven: Prosecutorial misconduct for using a defective indictment, failure to prove the charges against Petitioner beyond a reasonable doubt, and for engaging in a *Brady v. Maryland*, 373 U.S. 83 (1963), violation.

8. Claim Eight: Ineffective assistance of appellate counsel for failing to raise on direct appeal the issues presented in the habeas corpus petition.

9. Claim Nine: That various errors in this case resulted in a cumulative error.

Petition at 5–14.

## II. Respondent's Procedural Default Arguments

Respondent again argues Petitioner's claims are procedurally defaulted. Respondent Suppl. Br. As stated above, to preserve a claim for federal habeas corpus review, a prisoner must fairly present the claim through one complete round of state court review, including via a PLA before the Supreme Court of Illinois. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999); *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018). To properly exhaust the claim, the prisoner must present the operative facts and controlling legal principles before the state court so that it has a fair opportunity to correct the alleged federal violation. *Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018) (citations omitted). The claim must be squarely presented in the filing before the state court. *Sturgeon v. Chandler*, 552 F.3d 604, 610 (7th Cir. 2009). A passing reference to a claim is insufficient. *Id*. Equally, the state court judge is not required to read beyond the four corners of the filing, such as reviewing a lower court opinion or documents in the state court record, to understand the prisoner's claim. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

### A. Direct Appeal

Petitioner failed to preserve any of his instant claims via direct appeal. His direct appeal before the Appellate Court of Illinois was limited to an unrelated sentencing challenge (R. 11-3, Pet. Br. No. 3-12-0207, at 3–4; R 11-7, Pet. Br. No. 3-14-0572, at 2–3), and he did not bring a PLA before the Supreme Court of Illinois on direct appeal. Petitioner's direct appeal proceedings failed to exhaust any of his instant habeas corpus claims. *See* 7/31/2019 Order at 4.

As to Petitioner's postconviction proceedings, Petitioner raised several of his instant habeas corpus claims before the state trial court in his postconviction petition. Common Law Record at 312–41. However, he did not bring any of these claims in his counseled brief on the postconviction appeal, instead raising an unrelated fine issue. Pet. Br. 3-15-0394, at 2; R. 11-16, *Arteaga*, No. 3-15-0394 at 3.

### B. Counseled Postconviction Appeal and Motion for Leave to Amend

As stated above, the state appellate court denied Petitioner's *pro se* request to bring a motion to amend (Pet. Mot. Amend), explaining Petitioner was represented by counsel on his postconviction appeal. 6/13/2017 Order. Respondent's original answer argued that the appellate court's denial of his *pro se* motion was based on an adequate and independent state ground of decision of Illinois's prohibition against hybrid representation. Answer at 5. The previously assigned judge denied the argument in a prior order. 7/31/2019 Order 4. That ruling is law of the case, *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007); *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005), and Respondent makes no argument suggesting the Court should

revisit the ruling.

Respondent's supplemental filing[3] argues that Petitioner's motion to amend before the state appellate court in the postconviction proceeding fails to fairly present any claims under the required standard. Respondent Suppl. at 7–8. Br. Petitioner's motion to amend in the state appellate court is a page and half long and consists of five short paragraphs. Pet. Mot. Amend. It makes reference to a Fourth Amendment issue, but does so in a total of one sentence. *Id.* at 2. This "mere passing reference" does not provide any relevant law or facts in support of the claim, and so is insufficient to exhaust the Fourth Amendment issue. *Reynolds*, 902 F.3d at 705.

Petitioner also references his postconviction petition, suggesting he wants to raise those claims, as well as his trial motion *in limine* as to his Fourth Amendment issue. Pet. Mot. Amend at 1–2. But, referencing other documents in the state court record beyond the four corners of the motion is insufficient to exhaust a claim. *Baldwin*, 541 U.S. at 32. In sum, Petitioner did not present any of his instant habeas

---

[3]The previously assigned judge's Order instructed supplemental briefing on the limited questions of whether there was a different adequate and independent state ground of decision other than hybrid representation to support the state appellate court's ruling denying Petitioner's motion to amend, and whether the denial of his motion to amend established cause and prejudice to excuse a procedural default. 7/31/2019 Order at 4. Respondent's supplemental filing did not address either question raised in the 7/13/2019 Order, instead raising new arguments in support of the procedural default defense. Respondent Suppl. Br. The Court, in the exercise of its discretion, shall allow new arguments raised in the supplemental filing. *See Cheeks*, 571 F.3d at 686 (explaining that procedural default is an affirmative defense subject to forfeiture and it is within the Court's discretion to allow late raised arguments in support of the defense). Importantly, Respondent's new arguments do not raise any fairness concerns because Petitioner did not object to these new arguments, and he was able to respond to them on the merits, (Petitioner Resp.) *See Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015); *Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011).

corpus claims in his state postconviction appeal via either his counseled brief or *pro se* motion to amend.

### C. Postconviction PLA

Petitioner's postconviction PLA also failed to exhaust his habeas corpus claims. The PLA challenged the state appellate court's rejection of the fine issue, the issue raised in Petitioner's counseled brief before the appellate court. PLA at 2, 5. It is true that Petitioner includes one paragraph at the end of his PLA listing the issues raised in his postconviction petition and explaining his counsel declined to raise those issues before the appellate court. *Id*. at 5–6. However, there is no presentation of the necessary law and facts to fairly present any of these claims. The passing reference to these claims is insufficient to exhaust them. *Sturgeon*, 552 F.3d at 610. The failure to properly present any of Petitioner's habeas corpus claims in his postconviction PLA is an additional reason why his claims are procedurally defaulted.

### III.    Cause and Prejudice and Fundamental Miscarriage of Justice

As stated above, "a district court may excuse procedural default if the petitioner "can demonstrate either (a) cause for the default and prejudice (i.e., the errors worked to the petitioner's *actual* and substantial disadvantage,); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (i.e., a claim of actual innocence)." *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (internal quotation and citation omitted) (emphasis in original).

12

### A. Cause and Prejudice

Petitioner cannot excuse his defaults through either cause and prejudice, nor fundamental miscarriage of justice. Regarding cause and prejudice, cause is an "'objective factor, external to [Petitioner] that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington*, 721 F.3d at 465 (quoting *Smith*, 596 F.3d at 382). Examples of cause include (1) interference by officials making compliance impractical, (2) the factual or legal basis was not reasonably available to counsel, and (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)).

Petitioner cannot demonstrate cause in this case. Regarding the state appellate court's rejection of Petitioner's motion to amend in the postconviction proceedings, that rejection had no impact on Petitioner's ability to bring his *pro se* PLA on postconviction review. Petitioner claims he believed he was barred from raising his claims in his PLA because of the denial of the motion to amend resulted in him not preserving his claims, but his own PLA undercuts this argument. His postconviction PLA argued that the fine issue should have been resolved in his favor by the appellate court even though it was not properly raised in the trial court—an example of Petitioner arguing for a claim that was not properly preserved. Additionally, he listed his claims from his postconviction PLA and noted his appellate counsel failed to raise on appeal. This reveals that Petitioner knew he could raise, or at least attempt to raise, the claims. The procedural default occurred not because

13

Petitioner thought he was barred from raising the claims but because he failed to discuss them in a manner to fairly present the claims. In sum, the failure is ultimately Petitioner's. *See Smith*, 598 F.3d at 385 (explaining that *pro se* status does not constitute cause); *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003) (lack of education or illiteracy do not constitute cause).

Additionally, any failure by Petitioner's counsel to raise a claim either on direct appeal or postconviction proceedings does not excuse the default. An ineffective assistance of counsel argument asserted to excuse a default must, itself, be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith*, 565 F.3d at 352. Petitioner has not exhausted any ineffective assistance of counsel argument to excuse the default of his claims. Moreover, ineffective assistance of counsel in these settings is not a ground for excusing a procedural default. *Davila v. Davis*, 137 S. Ct. 2058, 2062–63 (2017) (holding that ineffective assistance of postconviction appellate counsel does not excuse default of claims).

## B. Fundamental Miscarriage of Justice

This leaves the fundamental miscarriage of justice (actual innocence) gateway to excuse Petitioner's defaults. To show actual innocence to defeat a default, Petitioner must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *McQuiggins*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Petitioner must present

14

new, reliable evidence that was not presented at trial—such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDonald v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")).

Petitioner points to no new evidence, and the evidence supporting his guilt is overwhelming. The drug dealer cooperated and identified Petitioner as his drug supplier. Petitioner was also surveilled by the police providing drugs to the drug dealer immediately before he sold the drugs to the undercover officer. Finally, a search of Petitioner's building discovered more drugs and paraphernalia used in the drug business. Petitioner was linked to the seized drugs and items via fingerprint evidence along with finding of the items with his name on them in close proximity to the drugs and associated materials. Petitioner cannot demonstrate a fundamental miscarriage of justice.

Petitioner's claims are procedurally defaulted, and he cannot excuse the defaults via cause and prejudice nor fundamental miscarriage of justice. The habeas corpus petition is denied.

### IV. Certificate of Appealability and Notice of Appeal Rights

The Court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right, and reasonable jurists would not debate, much less disagree, with this Court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for

16

filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## V. Conclusion

Petitioner's habeas corpus petition (R. 1) is denied on the merits. Any other pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to: (1) terminate Respondent Justin Hammers, and replace him with Petitioner's current custodian, Dion Dixon, Deputy Chief, Parole District One, Illinois Department of Corrections; (2) alter the case caption to *Arteaga v. Dixon*; and (3) enter a Rule 58 judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

Dated: March 28, 2022

Franklin U. Valderrama
United States District Judge